JoANN K. FALCONE, APPELLEE, v. FRANK S. FALCONE,
APPELLANT.

285 N. W. 2d 694

Filed November 27, 1979. No. 42467.

Anthony S. Troia, Troia Law Offices, P.C., for appellant.

Robert V. Burkhard, for appellee.

Heard before BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ., and ENDACOTT, District Judge.

BRODKEY, J.

Appellant herein, Frank S. Falcone, has appealed to this court from a decree entered by the District Court for Douglas County, Nebraska, dissolving the marriage of appellant and JoAnn K. Falcone, peti-

tioner-appellee. The sole assignment of error raised by appellant, whom we shall hereafter refer to as Frank, relates to whether a fair and equitable distribution of property was had.

Frank and appellee, hereafter referred to as JoAnn, were married on January 15, 1976. Both parties had been married prior to this union and brought children from these previous marriages into their home. One child, Matthew G., was born as issue of this marriage on April 25, 1977. The care and custody of Matthew was placed in JoAnn and is not in issue.

We herein are concerned solely with the property distribution, and whether the award of the trial court in this regard was equitable. The evidence adduced with regard to finances can be summarized as follows. Frank brought with him into the marriage only certain household furnishings and a 1969 Cutlass automobile. JoAnn's holdings were substantially greater. She had a house, subject to an encumbrance; a 1973 Plymouth automobile; a certificate of deposit (C.D.) in the amount of $2,500; a trust fund in the amount of $100,984.35; three $1,000 C.D.'s; and household goods. She was also receiving a social security check in the amount of $776 per month as surviving spouse benefits. She was likewise receiving these benefits at the time of trial. Shortly after their marriage, the parties purchased a 1975 Ford automobile, trading the 1969 Cutlass in on the Ford.

Frank was employed in the jewelry business prior to the marriage. In August of 1976, the parties formed a corporation, Falcone Jewelry, Inc., for the purpose of engaging in the jewelry business at the retail level. The idea for the business venture was Frank's; however, JoAnn agreed to it and thought it would be a good idea. The only stockholders of the corporation were Frank and JoAnn. A loan to the business in the amount of $35,000, which was also

personally guaranteed by JoAnn and Frank, was obtained on September 9, 1976, by the corporation. Security for the loan consisted of a security agreement in the fixtures and inventory of the store, as well as a $40,000 C.D. held in JoAnn's name. This C.D. was a part of the trust corpus which JoAnn caused to be terminated shortly after the marriage. Another portion of that corpus, in the amount of $11,000, was used to aid in the opening of the business, which occurred on September 20, 1976. A second loan in the amount of $20,000 was taken out by the corporation on January 11, 1978.

Frank did not contribute any money to the business. However, he did work at the store on a full-time basis and provided his expertise in the jewelry business, gained from working in the field for 5 years prior to the opening of the business. From the date of the opening of the business until the date of filing of this action in April of 1978, JoAnn either worked or was in attendance at the store on an average of 1 to 2 hours per day. Upon filing this action, the court determined that the house should be sold and the business liquidated. The sum of $18,949.41 was realized from the sale of the residence. Under a court order entered on May 12, 1978, Frank was ordered to liquidate the business. The inventory on hand as of April 17, 1978, was valued at $48,461.27 on a cost basis. Frank did not liquidate the business, as ordered, and the court thereafter ordered JoAnn to do so. She did so, and the amount received from said liquidation was $14,565.17.

Following the liquidation, JoAnn satisfied the various debts of the business, including the two loans to the bank, which were paid off on September 11, 1978, by turning over to the bank JoAnn's $40,000 C.D., used as security for the loans. The excess remaining from the C.D. after the loans had been satisfied was turned over to JoAnn. Further evidence was presented with regard to financial and other impro-

prieties of Frank; however, reiteration of such evidence would serve no useful purpose.

On the basis of the foregoing evidence, the trial court granted the petition of JoAnn and decreed that the marriage be dissolved. It also awarded the custody of the minor child of the parties to JoAnn, limited the visitation rights previously granted to Frank, and further ordered Frank to make payments of $40 per week as child support for Matthew, their minor child. The court also ordered Frank to pay alimony to JoAnn in the sum of $10 per year commencing January 1, 1979, for a period of 13 years, terminable upon the death of either party, but not upon the remarriage of JoAnn. The court divided the property of the parties as follows: It awarded all the proceeds resulting from the sale of the family residence in the sum of $18,949.41, plus accrued interest, to JoAnn; and also awarded her the 1973 Plymouth Fury III automobile; a certificate of deposit in the amount of $40,000; certain items of personal property currently in the possession of JoAnn; and other items consisting of appliances and other property in the possession of Frank, who was ordered to return them to JoAnn. Frank was awarded all other items of personal property currently in his possession, except those items previously ordered returned to JoAnn. It is clear from the above that of all the actual property in existence and owned by the parties at the time of the decree, JoAnn was awarded practically all of said property. However, in addition to the foregoing awards, the court found that JoAnn had lost the sum of $49,338.71 as a result of Frank's actions, and ordered Frank to repay JoAnn that sum as a property settlement, payable $4,000 forthwith and the remainder in installments of $300 per month, commencing November 1, 1978, and with a like sum to be paid on the 1st day of each month thereafter until that sum is paid in full. The court further ordered Frank to

hold JoAnn harmless from any debts unpaid as a result of the operation of Falcone Jewelry, Inc., which are asserted against JoAnn personally.

In its prior findings in the decree, the court found that from the assets acquired by JoAnn prior to her marriage to Frank, she had expended as a result of Frank's urging and direction, or as required by the guarantee she signed for loans by Frank for Falcone Jewelry, Inc., the total sum of $49,338.71, consisting of the following items: (1) A 1975 Ford station wagon titled in the name of Falcone Jewelry, Inc., and transferred by Frank to his brother, for the sum of $4,430; (2) the original investment by JoAnn in Falcone Jewelry, Inc., in the amount of $11,000; and (3) the repayment of loans personally guaranteed by JoAnn for Falcone Jewelry, Inc., in the amount of $33,908.71. The above items totaled $49,338.71, which the court felt should be repaid by Frank to JoAnn. It is clear from the court's decree that it treated the money and assets owned by JoAnn and invested in the business in the nature of a loan by her to Frank, which he should be required to repay by means of a so-called "property settlement" in this action. The question presented to us is whether the action of the trial court in this regard was equitable under the circumstances.

The distribution of property following a decree of dissolution is provided for in section 42-365, R. R. S. 1943: "When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property *as may be reasonable,* having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any

minor children in the custody of such party. * * *.''
(Emphasis supplied.) The fixing of alimony or
distribution of property rests in the sound discretion
of the District Court, and in the absence of an abuse
of discretion, will not be disturbed on appeal. Phil-
lips v. Phillips, 200 Neb. 253, 263 N. W. 2d 447 (1978);
Schmer v. Schmer, 197 Neb. 800, 251 N. W. 2d 167
(1977). This court is not inclined to disturb the divi-
sion of property made by the trial court unless it is
patently unfair on the record. Blome v. Blome, 201
Neb. 687, 271 N. W. 2d 466 (1978); Tavlin v. Tavlin,
194 Neb. 98, 230 N. W. 2d 108 (1975).

A review of the record has convinced us that the
property settlement in this case was not fair and
reasonable. By its decree, it seems clear the trial
court attempted to place JoAnn in the same finan-
cial position she was in at the start of the marriage.
While it is true that the contributions of the parties
are properly considered in the distribution of prop-
erty on the dissolution of a marriage, it is also true
that we have never adopted a position that such
awards shall be punitive. See concurring opinion of
White, C. Thomas, J., in Theye v. Theye, 200 Neb.
206, at p. 209, 263 N. W. 2d 92 (1978). We believe the
award in this case was punitive. JoAnn, in effect,
received all the marital property and, in addition,
the sum of $49,338.71 for any losses sustained by her
as a result of the marriage. Although it is true that
JoAnn provided most of the financial wherewithal in
connection with the establishment of Falcone Jew-
elry, Inc., the fact remains and the record is undis-
puted to the effect that the business itself, although
corporate in form, was in fact a family business and
joint enterprise, with the stock in the business being
owned jointly by JoAnn and Frank; that Frank was
the president and treasurer of the corporation and
JoAnn was the vice president and secretary; and
that there were no other shareholders. Although
Frank invested little or no money in the enterprise,

the record reveals that he was an experienced jeweler, had the expertise to run a jewelry store, and spent full time at this occupation, whereas JoAnn was working in the business only on an average of an hour or 2 a day. As a joint business enterprise, it seems clear that the parties were entitled to share the profits, if any, on a 50-50 basis and, except for the corporate form of the business, would have been also required to share the losses equally. Although it is true that Frank failed to abide by the order of the court to liquidate the business, whereupon the court ordered JoAnn to do so, the fact also remains that with an inventory which, under normal circumstances, should have been sufficient to cover the outstanding indebtedness of the company on dissolution, she disposed of the inventory, furniture, and fixtures for the total sum of only $12,644.50. It is true that JoAnn was required to and did pay off the balance on the two loans to the bank in the amount of $33,908.71. She should not be required to sustain the entire loss in this regard; and as a matter of fairness and equity, Frank should be required to sustain at least one-half of that loss. However, we do not conclude that fairness and equity require that Frank reimburse her the sum of $11,000 originally invested by her in the family business or the sum of $4,430 for the Ford station wagon, which items were included in the court's decree in computing the total sum of the judgment awarded to JoAnn in the sum of $49,338.71.

We conclude, therefore, that the decree of the trial court should be modified to require Frank to reimburse JoAnn for one-half of the amount expended by her, which was $33,908.71, in paying off the balance owed by Falcone Jewelry, Inc., to the bank, and individually guaranteed by the parties, which share amounts to the sum of $16,954.35, together with interest thereon at the legal rate, said sum to be payable on the same terms and conditions as set forth in

the decree entered by the trial court.

As so modified, the decree of the District Court should be and hereby is affirmed.

AFFIRMED AS MODIFIED.